UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN CASON,

        Plaintiff,                     Civil Action No. 15-12661
                                        Honorable Sean F. Cox
        v.                      Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

### AMENDED REPORT AND RECOMMENDATION
### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 16, 18],
### AND ON SANCTIONING ATTORNEY JOSHUA L. MOORE

      Plaintiff Kevin Cason appeals a final decision of defendant

Commissioner of Social Security ("Commissioner") denying his application

for supplemental security income benefits ("SSI") under the Social Security

Act (the "Act").  Both parties have filed summary judgment motions,

referred to this Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B).  The Court finds that the administrative law judge's

("ALJ") decision is supported by substantial evidence, and thus

**RECOMMENDS** that:

•    the Commissioner's motion **[R. 18]** be **GRANTED**;

•    Cason's motion **[R. 16]** be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

The Court additionally **RECOMMENDS** that attorney Joshua L. Moore be **SANCTIONED** and **REFERRED** to the Chief Judge to consider disciplinary proceedings and/or a referral to the Grievance Commission for investigation.

## I.   BACKGROUND

### A.   Cason's Background and Disability Application

Cason was 44 years old when he submitted his application for SSI in August 2012.  [R. 12-5, Tr. 145]. He has a high school education, has previously worked as a sales clerk, real estate agent and managing janitor, and has spent several years in prison, most recently until 2011.  [R. 12-2, Tr. 31; R. 12-6, Tr. 181; R. 12-7, Tr. 256, 270, 395].  Cason's application initially listed only his HIV positive status as rendering him disabled, [R. 12-6, 180], but he also submitted evidence of mental health impairments. Although Cason initially alleged an onset date of October 2006, he amended it to January 22, 2013 at the hearing.  [R. 12-2, Tr. 10].  After the hearing, the ALJ found Cason to be not disabled. [R. 12-2, Tr. 10].  The Appeals Counsel denied Cason's request for review, and he timely filed for judicial review.  [*Id.,* Tr. 1-3; R. 1].

**B.    The ALJ's Application of the Disability Framework**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 920(c).

3

could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). [2]

Applying this framework, the ALJ concluded that Cason was not disabled. At the first step, she found that Cason had not engaged in substantial gainful activity since the alleged onset date of January 22, 2013. [R. 12-2, Tr. 12]. At the second step, she found that Cason had the severe impairments of a bipolar disorder, post-traumatic stress disorder and anti-social personality traits, but that he was not severely impaired by HIV. [*Id.,* Tr. 12-13]. Next, the ALJ concluded that Cason's mental impairments did not meet or equal a listing. [*Id.*, Tr. 13-14].

Between steps three and four, the ALJ found that Cason had the RFC to perform a full range of work at all exertional levels, but with the non-exertional limitations of unskilled work with simple instructions; no working as part of a team; no more than occasional contact with supervisors, brief interaction with coworkers and no contact with the general public; only

---

[2] Opinions analyzing applications for Disability Insurance Benefits are applicable because the same standards apply to SSI claims. *See* 20 C.F.R. §§ 404.1520 and 416.920.

4

routine changes; and no requirement to make independent decisions. [*Id.,* Tr. 15].

At the fourth step, the ALJ found that Cason could not perform past relevant work. [*Id.*, Tr. 17]. After considering Cason's age, education, work experience, RFC, and the testimony of the VE, the ALJ found at step five that Cason could perform a significant number of other jobs in the national economy, including packager, assembler and inspector. [*Id.*, Tr. 17-18]. Thus, the ALJ found that Cason was not disabled.

## II.   ANALYSIS

### A.

Before turning to the merits of Cason's claim, the Court will address the brief filed by his attorney, Joshua L. Moore. His brief fits a now familiar pattern in that it falsely accuses the ALJ of not discussing issues that are plainly analyzed in the decision. For example, Moore alleges, "There is absolutely no discussion of Mr. Cason's HIV in the ALJ's decision," while in fact the ALJ discussed with specificity the lack of symptomology or functional impairments stemming from Cason's HIV, and thus found it to not be a severe impairment. [R. 12-2, Tr. 12-13; R. 16, PgID 548]. Moore alleges, "There is no discussion of the evidence whatsoever in the ALJ decision," while in fact the ALJ discussed the relevant medical evidence in

the record.  [R. 12-2, Tr. 12-17; R. 16, PgID 548].  Moore alleges, "There is never a discussion of what weight the ALJ gave to treating or non-treating medical sources," while in fact the ALJ specified that she gave a February 2014 medical statement "little weight," that she gave the Global Assessment of Functioning ("GAF") score assessed by Cason's treaters at Team Mental Health "little weight," and that she gave a consultative examiner's opinion "great weight" to an extent described in the decision. [R. 12-2, Tr. 14, 16; R. 16, PgID 550].  Moore accused the ALJ's assessed RFC of "light work" as failing to accurately portray Cason's physical and mental impairments, while in fact the ALJ assessed Cason as having a RFC to perform "a full range of work at all exertional levels . . . ."  [R. 12-2, Tr. 15; R. 16, PgID 551].

The irony of Moore's briefing is that, at the same time that he is hyperbolically accusing the ALJ of not performing basic analysis, he relies on cursory, underdeveloped arguments with not a single citation to the medical record.  Previously, this Court has warned Moore that he could face sanctions and referral for disciplinary action due to his "almost complete lack of argument development," *Spiteri v. Colvin*, No. CV 14-14140, 2015 WL 7258749, at *3 and n. 3 (E.D. Mich. Nov. 9, 2015), *report and recommendation adopted sub nom. Spiteri v. Comm'r of Soc. Sec.*, No.

6

14-CV-14140, 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015).  In addition, this Court has discovered a relevant treating physician opinion that Moore failed to cite in *Fisher v. Colvin*, No. CV 14-13516, 2015 WL 7251308, at *3 (E.D. Mich. Oct. 30, 2015), *report and recommendation adopted sub nom. Fisher v. Comm'r of Soc. Sec.*, No. 14-CV-13516, 2015 WL 7717164 (E.D. Mich. Nov. 30, 2015); has found that he seriously misrepresented the ALJ in *Rhodes v. Colvin*, No. CV 14-13716, 2015 WL 6509151, at *3 (E.D. Mich. Oct. 7, 2015), *report and recommendation adopted sub nom. Rhodes v. Comm'r of Soc. Sec.*, No. 14-13716, 2015 WL 6796594 (E.D. Mich. Nov. 6, 2015); and has found that his client met a listing despite Moore's "cursory and underdeveloped" argument in *Harper v. Comm'r of Soc. Sec.*, No. 2:14-CV-11630-LJM, 2015 WL 4509076, at *4 (E.D. Mich. July 24, 2015).

Other judges have warned Moore, including the Honorable Gerald E. Rosen, then Chief United States District Judge, whose rebuke emphasized that Moore was providing a disservice to his clients:

> Such hyperbole and generalized accusations of ALJ misfeasance are no substitute for engagement with the actual evidence in the administrative record and the explanations and analysis actually put forward by the ALJ. Counsel ill serves his clients by charging the ALJs with wholesale dereliction of their duties, rather than identifying specific findings by the ALJs that might lack evidentiary support or rest upon legally deficient reasoning.  Accordingly, counsel is placed on notice that this

7

> Court will carefully examine his submissions in future suits to
> ensure that they advance specific, narrowly tailored, and
> properly supported arguments that rest upon (and cite to) the
> facts of a particular case. Failure to adhere to these standards
> will result in the imposition of sanctions and possible referral of
> counsel for disciplinary proceedings.

*Roberts v. Comm'r of Soc. Sec.*, No. 14-11994, 2015 WL 5439725, at

*2 (E.D. Mich. Sept. 15, 2015).

After these repeated warnings, Magistrate Judge Anthony P.

Patti recommended last month that Moore be sanctioned and/or

referred for disciplinary proceedings due to his failure to cite to

evidence in the vast medical record and misrepresentations of the

ALJ in another case. *Lapprich v. Comm'r of Soc. Sec.*, Case No.15-

13290, R. 19, PgID 1013-14, 1028 (E.D. Mich. July 18, 2016). In

objection, Moore alleged that he is "disabled," which he says is the

reason for his "very zealous" advocacy. *Lapprich*, Case No.15-13290

at R. 20, PgID 1033 (July 20, 2016). But, while Moore's language is

often caustic, he does not zealously represent his clients; his

arguments are woefully underdeveloped, he overlooks important

evidence and altogether fails to cite to the medical record. Moore's

ineffectual representation is made all the more troubling by the fact

that, according to an electronic court filing search, he has

represented upwards of 100 Social Security plaintiffs in this Court

8

from 2014 to the present, and over 40 of his cases are currently pending in this district alone.[3]

Moore's business approach appears to be to prolifically file Social Security cases, do minimal work and rely upon Court staff to thoroughly review the record and perform the appropriate legal analysis. Although his failure to adequately develop arguments could be seen as acting as a waiver, *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997), judges in this district have been loath to simply reject claims and prejudice claimants with potentially meritorious claims. Moore's approach has proved successful for him at times; his client prevailed in *Fisher* and he collected attorney's fees after this Court discovered a treating physician opinion that he failed to cite. *Fisher,* 2015 WL 7251308 at *3. Likewise, in *Harper*, this Court did the work to determine that the claimant met a listing despite Moore's "cursory and underdeveloped" argument, *Harper v. Comm'r of Soc. Sec.*, No. 2:14-CV-11630-LJM, 2015 WL 4509076, at *4 (E.D. Mich. July 24, 2015), yet Moore collected his fees. This business practice is unacceptable.

_____

[3]Moore claims to represent claimants all over the country, so his full caseload is unknown. *Lapprich*, Case No.15-13290 at R. 20, PgID 1033 (July 20, 2016).

After another attorney was repeatedly criticized by judges in
this district for his conclusory assertions and underdeveloped
argument, United States District Judge Terrence G. Berg sanctioned
that attorney and referred him to the Chief Judge under Eastern
District of Michigan Local Rule 83.22(c)(3) and (e) to determine
whether disciplinary proceedings should be initiated or whether the
matter should be referred to the Michigan Attorney Grievance
Commission for investigation. *Swadling v. Comm'r of Soc. Sec.*, No.
14-10251, 2015 WL 1511048, at *2 (E.D. Mich. Mar. 24, 2015).
Judge Berg took this approach due to the broad scope of the
attorney's practice in this district.

Given the broad scope of Moore's practice in this district, he too
should be referred to the Chief Judge to consider disciplinary
proceedings and/or a referral to the Grievance Commission for
investigation.  Further, since Moore filed the brief on behalf of Cason
on October 27, 2015, more than a month after then Chief Judge
Rosen warned of possible sanctions in his September 15, 2015
opinion, Moore should be sanctioned pursuant to the Court's inherent
authority.  *Swadling*, 2015 WL 1511048 at *1 (attorney's failure to

10

address deficiencies in work product warranted sanctions under
Court's inherent authority).

## B.

Pursuant to § 405(g), this Court's review is limited to determining
whether the Commissioner's decision is supported by substantial evidence
and was made in conformity with proper legal standards. *Gentry v. Comm'r
of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is
"more than a scintilla of evidence but less than a preponderance; it is such
relevant evidence as a reasonable mind might accept as adequate to
support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241
(6th Cir. 2007) (internal quotation marks and citation omitted). Only the
evidence in the record below may be considered when determining
whether the prior decision is supported by substantial evidence. *Bass v.
McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is
conditioned on the ALJ's adherence to governing standards. "Chief among
these is the rule that the ALJ must consider all evidence in the record when
making a determination, including all objective medical evidence, medical
signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*,
486 F.3d at 249. In other words, substantial evidence cannot be based

11

upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted). The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). The ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

Cason's brief accuses the ALJ of committing a slew of alleged errors, but, as noted, his arguments are underdeveloped and he does not cite to the medical record. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson*, 125 F.3d at 995-96 (citation and internal quotation marks omitted). Given that, the Court will not

12

attempt to address every issue cursorily raised in Cason's brief, but it did thoroughly review the record and finds that the ALJ's decision is supported by substantial evidence.

## C.

Cason has the burden of demonstrating that his HIV is severe, that it meets a listing, or that his RFC is insufficiently restrictive. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (claimant bears burden during first four steps); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears burden of demonstrating need for more restrictive RFC).  He did not carry these burdens.

The record supports the ALJ's determination that Cason's HIV "is stable[,] remaining well controlled and asymptomatic," such that it is not a severe impairment.  [R. 12-2, Tr. 13].  He was on the same drug cocktail of Lexiva, Norvir and Truvada since at least 2009, and his lab work and physical examinations rendered consistently normal results.  [R. 12-7, Tr. 256-58, 260-62, 380, 400-05, 427-30, 431-34, 435-38]. When Cason experienced diarrhea in July 2013, the nurse practitioner attributed it to lactose intolerance instead of HIV.  [*Id.*, Tr. 431-32].  In February 2014, Lawrence Crane, M.D., of the Wayne State University Physician Group whose staff had been treating Cason since at least 2009, ostensibly

13

submitted a "Medical Report on Adult with Allegation of Human Immunodeficiency Virus (HIV) Infection." [*Id.*, Tr. 419-21].  Dr. Crane, or his nurse practitioner Gerald Burns,[4] opined that Cason suffered from depression and anxiety, but left blank the portions of the report pertaining to opportunistic, fungal and viral infections; wasting syndrome, diarrhea of infections resistant to treatment; and the manifestations of HIV infection. [*Id.*].  Given this record, Cason has not sustained his burden of demonstrating that his HIV is severe, that he met a listing or that he required a more restrictive exertional RFC.

### D.

The merit of the ALJ's decision that Cason is not disabled by mental impairments is a closer call.  For one thing, the ALJ mistakenly referred to Dr. Crane as a nurse practitioner and accorded little weight to the February 2014 opinion that Cason suffered marked difficulties in maintaining social functioning and marked difficulties in timely completing tasks due to deficiencies in concentration, persistence or pace.  [R. 12-2, Tr. 14; R. 12-7, Tr. 421].  The ALJ specifically relied in part upon her understanding that Dr. Crane was a nurse practitioner when assigning that opinion little weight. [R. 12-2, Tr. 14].  The ALJ's confusion is understandable because it

---

[4] The lack of clarity regarding Dr. Crane's involvement in rendering this opinion will be addressed below.

14

appears that the opinion was actually signed by nurse practitioner Burns.
[R. 12-7, Tr. 421].  Burns provided HIV check-ups for Cason in 2013, and
his reports were signed off on by Dr. Crane.  [*Id.*, Tr. 427-38].

Regardless of whether the February 2014 opinion was actually
approved by Dr. Crane, the ALJ had good reasons for giving that opinion
little weight.  Ordinarily, the "treating physician rule" requires an ALJ to give
controlling weight to a treating physician's opinions regarding the nature
and severity of a claimant's condition when those opinions are well-
supported by medically acceptable clinical and diagnostic evidence, and
not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723,
727-29; *Rogers*, 486 F.3d at 242-43.  The treating physician rule is
predicated on the detailed, longitudinal picture treating sources can
provide.  *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir.
2011).  Here, while Dr. Crane examined Cason on several occasions from
2007[5] to 2012, he was providing only HIV check-ups, not mental status
examinations, and he had not personally examined Cason since his alleged
disability onset date in January 2013.  [R. 12-7, Tr. 256-58, 260-62, 280-81,

---

[5] This is assuming that he is the same Lawrence Crane, M.D., who treated
Cason when he was incarcerated with the Michigan Department of
Corrections.  [R. 12-7, Tr. 280-81].

435-38].[6]  And the ALJ was correct that the February 2014 report was not accompanied by supporting treatment or documentation to support the marked limitations alleged. [R. 12-2, Tr. 14].

If Burns filled out the February 2014 report, the treating physician rule did not apply, but the ALJ was still required to provide "some basis" for the little weight given to the opinion. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-41 (6th Cir. 2007) (nurse practitioners are non-medical sources but ALJ must provide basis for rejecting opinion); *Jones v. Colvin*, No. 5:14-CV-00457-GFVT, 2016 WL 1175202, at *3–4 (E.D. Ky. Mar. 24, 2016) (same).  The ALJ's reliance on the lack of supporting treatment or documentation was sufficient to meet this obligation.

The question that remains is whether the ALJ's assessment of Cason's non-exertional RFC provides sufficient restrictions given his documented mental health impairments.  Both treating sources and a consultative examiner found that Cason suffers from mental impairments. Treating sources at Team Mental Health Services, primarily Karen Boyd, N.P., diagnosed Cason as suffering from major depression, bipolar disorder, stress and post-traumatic stress disorder (PTSD), anxiety attacks, feelings of uselessness and worthlessness, insomnia, racing thoughts, and

---

[6] Cason received his mental health treatment from practitioners at Team Mental Health.  [R. 12-7, Tr. 369-74, 377-81, 383-98, 406, 410-11].

rapid mood swings, and they consistently found him to have a GAF of 45 or 50, suggesting serious impairment.[7]  [*See* R. 12-7, Tr. 369-74, 377-81, 383-98, 406, 410-11].

Nick Boneff, Ph.D., conducted a consultative examination, and similarly diagnosed Cason with bipolar disorder, PTSD and antisocial personality traits, and issued a GAF of 45.  [*Id.*, Tr. 364-67].  Dr. Boneff concluded, "Based on today's exam, the claimant is experiencing extreme anxiety and he was presenting as hyper-manic today.  These current reported psychiatric symptoms would seem to interfere with his ability to function at a sustained pace and interact appropriately with others."  [*Id.*, Tr. 367].  The ALJ gave Dr. Boneff's opinion great weight, but queried, "*to what degree* are these areas limited? The examiner is silent on that issue." [R. 12-2, Tr. 16 (emphasis in original)].

To answer that question, the ALJ considered the opinion of Daniel Blake, Ph.D., the state records reviewer, as well as Cason's activities of daily living and "questionable adherence to prescribed treatment."  [R. 12-2, Tr. 16-17; R. 12-3, 68-71].  Dr. Blake opined that Cason had mild to

---

[7] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. . . . [S]cores between 41 and 50 represent serious symptoms or serious impairment in these areas." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n. 1 (6th Cir. 2012) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed.1994)).

17

moderate limitations, but was capable of simple work activity. [8]  [R. 12-3, 68-71].  In addition, the record supports the ALJ's conclusion that Cason was fully independent with activities of daily living; he actually helped to care for his ailing mother.  [R. 12-7, Tr. 365, 370, 390].  It is also true that Cason would sometimes miss his doses of Risperdal, which Boyd prescribed for his depression.  [*Id.*, Tr. 379, 384, 435].

Most importantly, the ALJ did not disregard the evidence of Cason's mental health; she adopted a RFC to account for it.  [R. 12-2, 15, 17]. Addressing Dr. Boneff's opinion that Cason's mental impairments would interfere with his ability to work at a sustained pace, the ALJ limited him to unskilled work with simple instructions, no routine changes and no requirement to make independent decisions.  [*Id.*].  To compensate for Cason's difficulty with interacting appropriately with others, the RFC excluded jobs in which he would have to work as part of a team, have more than occasional contact with supervisors, have more than brief interaction with coworkers and have any contact with the general public.  [*Id.*].  The ALJ concluded that "the record cannot reasonably support any greater limitation." [*Id.*, Tr. 17].

---

[8] The ALJ noted and appropriately considered that Dr. Blake did not have the benefit of Dr. Boneff's opinion or the more recent treatment records. [R. 12-2, Tr. 17].

This conclusion is supported by substantial evidence.  Although Cason suffered from mental impairments, he was also noted to have good grooming; to be timely, cooperative and polite; to be fully oriented, with intact memory and fair judgment; to have normal speech and thought processes and to have average intelligence.  [R. 12-7, Tr. 365-66, 377, 385-87, 407-08].  The record includes no evidence of psychiatric hospitalization or similar acute events.

Even if the record could support a finding of disability, the Court must affirm when substantial evidence supports the ALJ's finding.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (internal citations omitted).  That is especially true where, as here, Cason has failed to set forth any specific evidence that he requires a more restrictive RFC.

## III.   CONCLUSION

The Court **RECOMMENDS** that the Commissioner's motion for summary judgment [R. 18] be **GRANTED**, that Cason's motion for summary judgment [R. 16] be **DENIED**, the Commissioner's decision be

19

**AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and that

Joshua L. Moore be **SANCTIONED** and **REFERRED** to the Chief Judge to

consider disciplinary proceedings and/or a referral to the Grievance

Commission for investigation.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 9, 2016

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 9, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

21